Anthony Scaglione v. Commissioner.
Scaglione v. Commissioner
Docket Nos. 3497-69, 2601-70.
United States Tax Court
T.C. Memo 1972-78; 1972 Tax Ct. Memo LEXIS 176; 31 T.C.M. (CCH) 312; T.C.M. (RIA) 72078; March 30, 1972, Filed *176 John F. Kane, 2066 Penobscot Bldg., Detroit, Mich., for the petitioner. James C. Lynch, for the respondent. STERRETT
Memorandum Findings of Fact and Opinion STERRETT, Judge: Respondent determined the following deficiencies in petitioner's Federal income tax and additions to tax: Additions to
tax
Year
Deficiency
under sec.
6653(a) [1]
1965
$ 926.96
$ 46.35
1966
4,893.88
244.69
The issues for decision are whether respondent, through the use of petitioner's bank deposits plus cash expenditures, correctly determined petitioner's gross income. And, if so, whether any part of the deficiencies is due to negligence or intentional disregard of rules and regulations. Findings of Fact Some of the facts have been stipulated. The stipulation together with the exhibits attached thereto are incorporated herein by this reference. Petitioner is Anthony Scaglione, whose legal address was Warren, Michigan, as of the date his petitions were filed with the Tax Court. His Federal income tax returns for the taxable years 1965 and 1966 were *177 filed on the cash basis with the district director of internal revenue at Detroit, Michigan. During the years in issue, petitioner was a single man who lived with his mother, Mary Scaglione (hereinafter sometimes referred to as Mrs. Scaglione). They maintained a home at Grosse Pointe Woods, Michigan, for the greater part of 1965. In December of that year petitioner sold the home for approximately $44,000 subject however to a $12,000 mortgage. He received a $500 down payment and the remainder shortly thereafter. He then purchased land and had a new residence built in Warren, Michigan, petitioner's present address. Petitioner was unemployed from at least 1963 through 1966. Sometime prior to 1963 he was engaged in the used car business. Petitioner maintained a safety deposit box at Manufacturers National Bank of Detroit until approximately 1965 when he transferred said box to the Michigan Bank where it is presently located. He also maintains a deposit box at the National Bank of Detroit. There was however little if any cash in any of the above noted facilities during the years in issue. During 1965 and 1966 petitioner maintained a checking account at the Michigan Bank. He made deposits *178 of at least $7,694.12 during 1965 and $52,587.86 during 1966. The great majority of these deposits was made in cash rather than by check. Of the 1966 total, $1,266.60 represented redeposits. A portion of the deposits represented nontaxable income from a veteran's pension, principal on two land contracts, proceeds from the sale of his residence, and the cash surrender value of a life insurance policy. The funds acquired on the surrender of the policy represent the liquidation of a mortgage life insurance policy on petitioner's life acquired in connection with the Grosse Pointe Woods house. Such amounts are reflected in the following schedule: 1965
1966
Proceeds from Veteran's pension
$1,456.00
$ 1,632.00
Land contracts:
Smith
2,340.23
5,642.31
Holcomb
690.00
715.00
Sale of Residence
500.00
31,955.99
Insurance Policy
1,565.27
Total
$4,986.23
$41,510.57 Petitioner expended approximately $150 per week during 1965 and 1966 for living expenses for himself and his mother. Of this amount $125 per week represents petitioner's own personal expense. Such amounts were, for the most part, paid in cash and were not derived from funds deposited in petitioner's *179 checking account. Utility and medical bills were in addition to the above noted figures and were paid by check. 314 During the years in issue petitioner wrote a total of seven checks to "cash" in the following amounts: Date
Check #
Amount
2/14/65
234
$ 500
12/17/65
200
2/17/66
321
1,000
3/ 1/66
325
50
3/ 7/66
327
800
4/20/66
385
1,500
6/29/66
372
5
Total
$4,055 Petitioner also cashed a $200 check for an Alice Volpe during 1966. The land petitioner purchased in 1966 in Warren cost $4,500 and he applied at least $2,500 of the proceeds from the sale of the Grosse Pointe Woods house toward that amount. Petitioner's mother also maintained a safety deposit box during the years in question. This box contained cash which was inherited from her husband who had passed away in 1955. The extent of the cash contained therein during 1965 and 1966 is uncertain. She also had two savings accounts, each containing $10,000. The origin of these funds cannot be ascertained. The savings account statements indicated no withdrawals made to petitioner. Mrs. Scaglione received an estimated $1,000 per year in interest from the two accounts. She also *180 received $70 per month in social security benefits. Such amounts were used to defray the living expenses incurred by herself and petitioner. Petitioner's Federal income tax returns filed for the years 1963-1966 report the following amounts of gross income:
1966
$270.58
1965
559.77
1964
908.25
1963
929.99 Such amounts are characterized as interest income received from petitioner's land contracts. Petitioner failed to keep adequate books and records with respect to his taxable income for the years 1965 and 1966. Though respondent asserts petitioner's living expenses should be increased from $3,600 to $6,500, thereby providing evidence of further taxable income, respondent is not making any claim for an increased deficiency. Opinion The issues presented for decision relate to whether respondent, through the use of the bank deposits plus cash expenditures method, correctly determined petitioner's gross income. If we agree with respondent that there are deficiencies in petitioner's income taxes for the years 1965 and 1966, a further determination must then be made with respect to the applicability of the penalty provided in section 6653(a) where deficiencies *181 are found to be due to negligence or intentional disregard of rules and regulations. Where a taxpayer has failed to keep adequate books and records, the propriety of the bank deposits plus cash expenditures method in reconstructing a taxpayer's income is well established. (C.A. 5, 1967), affirming on this issue a Memorandum Opinion of this Court. . Such method presents evidence which can be rebutted. However, as with other deficiencies, petitioner has the burden of disproving respondent's determination. Petitioner has failed to satisfy his burden of proof. The facts noted above indicate that petitioner, during 1965 and 1966, made deposits in his checking account of at least $7,694.12 and $52,587.86 respectively, while his Federal income tax returns for the same period reported only $559.77 and $270.58 of gross income. Though a substantial portion of the deposits was attributable to nontaxable income, the remainder greatly exceeded the amounts reported on the returns. In addition, he expended $150 per week for living expenses. Such amounts were paid in cash and were not derived *182 from funds deposited in petitioner's checking account. Petitioner attempts to explain away this disparity by asserting that the added funds were acquired from: (1) income saved during his business years, (2) money received from his mother, and (3) sale of an automobile. [2]
We can deal quickly with these claims. First, petitioner's returns showed no savings account interest or stock dividend income. Petitioner informed the revenue agent that though he had a safety deposit box there was no money stored in it. 315 Further petitioner testified he was in the used car business through 1964. However, the returns for years 1963 and 1964 clearly indicate to the contrary; petitioner was unemployed with no income from an automobile business during that period. Hence, petitioner has failed to offer evidence with respect to the source for such savings and, in fact, the record militates against there being a source. Secondly, his mother's savings accounts indicate no withdrawals to or for petitioner. Though his mother had some *183 cash in a deposit box, her testimony on this score was unclear; stating on the one hand that she had spent a portion of the money contained therein while also asserting that the box contained the same amount of cash at the date of trial as on the date of her husband's death. Petitioner's reference to cash received as an insurance reimbursement from a robbery is unsubstantiated. He has failed to produce either police records confirming the theft or an insurance report indicating the payment of a claim. Finally, petitioner has again failed to present any substantive evidence which would indicate the sale of an automobile. The fact is that petitioner's entire case rests on his self-serving testimony. Due to the innumerable conflicts contained therein we can give such evidence little weight. Accordingly we hold that petitioner has failed to report the following amounts of income: 1965
Deposits to Michigan Bank
$7,694.12
Less--Nontaxable Deposits:
Veteran's pension
$1,456.00
Land Contracts Smith
2,340.23
Holcomb
690.00
Sale of Residence
500.00
Cash Surrender Value of Life
Insurance Policy
Redeposits
4,986.23
Net Taxable Deposits:
$2,707.89
Additional Cash Expenditures
$7,800.00
Personal Living Expenses
Less--Mother's Social Security
$ 840.00
payments
Mother's interest income
1,000.00
1,840.00
+5,960.00
Correct Gross Income
$8,667.89
Amount Reported on Return
- 559.77
Increase in Taxable Income
[3] $8,108.12
*184 1966
Deposits to Michigan Bank
$52,587.86
Less--Nontaxable Deposits:
Veteran's pension
$1,632.00
Land Contracts Smith
5,642.31
Holcomb
715.00
Sale of Residence
31,955.99
Cash Surrender Value of Life
1,565.27
Insurance Policy
Redeposits
1,266.60
42,777.17
Net Taxable Deposits:
$ 9,810.69
Additional Cash Expenditures
$7,800.00
Personal Living Expenses
Less--Mother's Social Security
$ 840.00
payments
Mother's interest income
1,000.00
1,840.00
+ 5,960.00
Correct Gross Income
$15,770.69
Amount Reported on Return
- 270.58
Increase in Taxable Income
$15,500.11
Petitioner has the burden to show that no part of any underpayment was due to negligence or intentional disregard of rules or regulations. ; . In the instant case, due to petitioner's substantial understatement of income and his lack of financial records, we hold that such understatement, without proof to the contrary, *185 was due to negligence or the intentional disregard of rules and regulations as provided in section 6653(a). ; ; . Decisions will be entered under Rule 50. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954 unless otherwise indicated.↩
2. Petitioner does not contend that any portion of the checks made out to "cash" were used to pay his personal living expenses, i. e. food, clothing, etc.↩
3. Though respondent increased petitioner's personal living exenses he is not claiming an increased deficiency.↩